IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DEAN W. FRIKART      PLAINTIFF

VS.      CIVIL NO. 05-3061

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION      DEFENDANT

## MEMORANDUM OPINION

Dean Frikart ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income ("SSI"), under Title XVI of the Act.

**Background:**

The application for SSI now before this court was filed on May 19, 2003, alleging an onset date of May 19, 2003, due to Crohn's disease, back pain, osteoarthritis, seizures, hypertension, ringing in the ears, and pain in the legs and joints. (Tr. 67-71). An administrative hearing was held on March 10, 2005. (Tr. 279-308).

At that time of the administrative hearing, plaintiff was fifty-one years old and possessed a high school education. (Tr. 11). The record reveals that he had past relevant work ("PRW") experience greasing trucks at a trucking company. (Tr. 11).

The Administrative Law Judge ("ALJ"), rendered an unfavorable decision on June 7, 2005. (Tr. 11-21). He concluded that plaintiff's Crohn's disease and hypertension constituted severe impairments based on the requirements in the regulations. (Tr. 20). However, he determined that

neither of these ailments met or medically equaled any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 20). The ALJ then found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work on a sustained basis. (Tr. 20). As this RFC precluded plaintiff from returning to his PRW, with the assistance of a vocational expert ("VE"), the ALJ concluded that plaintiff could still perform work as a housekeeper, meat processor, and plastics worker. (Tr. 20-21).

On September 23, 2005, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties were afforded the opportunity to file appeal briefs, but plaintiff chose not to do so. (Doc. # 8). Accordingly, this case is now ready for decision.

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words,

if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in

3

light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Evidence Presented:**

On October 12, 1995, plaintiff sought emergency treatment for an alleged seizure. (Tr. 158). Plaintiff also complained of tinnitus and occasional vertigo, stating that it had increased in severity over the past two years. (Tr. 158). He stated that he had also been experiencing frequent bitemporal headaches and felt like his ears were "plugged." Dr. Peter Stenehjem noted that plaintiff's examination was unremarkable. Further, a CT scan revealed no evidence of acute intracranial process. (Tr. 160). Accordingly, plaintiff was discharged without medical intervention. (Tr. 159). However, he was given routine headache and seizure instructions. (Tr. 159). Dr. Stenehjem further reported that plaintiff was advised to undergo an ear, nose, and throat ("ENT") follow-up, but plaintiff failed to return for this exam. (Tr. 158). Plaintiff was also advised to follow-up with a neurologist. (Tr. 159). However, the record is also devoid of evidence to indicate that plaintiff ever did so.

Records also reveal that plaintiff had a history of Crohn's disease and rectal bleeding. (Tr. 148-221). An EGD conducted in 1996 revealed a large dark diverticulum of the gastric fundus. (Tr. 156). Prior to the relevant time period, plaintiff had last sought treatment for this impairment in March 1999. (Tr. 221).

Hospital records dated July 15, 2002, show that plaintiff was treated at the emergency room for complaints of rectal bleeding and lower back pain. (Tr. 233). A physical examination

demonstrated some pain on motion. However, plaintiff's neurological examination was within normal limits. (Tr. 233). Further, abdominal x-rays were unremarkable. (Tr. 228). Plaintiff was offered hospitalization, but refused it. (Tr. 227). Accordingly, the doctor diagnosed him with Crohn's disease and gastrointestinal bleeding. He then prescribed Flagyl, Prednisone, and Comotil. (Tr. 227).

Plaintiff returned to the emergency room on November 7, 2002, due to concerns about his blood pressure. (Tr. 223). He indicated that he had stopped taking his blood pressure medication a few days prior, after running out of medication. As a result, plaintiff reported some fullness in his head and a generally "bad" feeling. The doctor noted plaintiff's history of Crohn's disease, but indicated that plaintiff had no active problems at that time. (Tr. 223). Accordingly plaintiff was directed to resume his Metoprolol and to follow-up with a gastroenterologist. (Tr. 223).

Notes from the Burnett-Croom-Lincoln-Paden clinic dated January 10, 2003, show that plaintiff complained of right knee pain, which he rated as one on a scale of one to ten, and ringing in his ears. (Tr. 240). However, his physical exam was normal. As such, plaintiff was diagnosed with a questionable history of Crohn's disease with frequent steroid prescriptions, tinnitus, hypertension, and social stressors/unemployment. The doctor directed him to avoid excessive noise. (Tr. 240).

On May 25, 2004, plaintiff was seen at the emergency room with complaints of pain in his left flank that radiated into his groin and abdomen. (Tr. 252-253). Plaintiff was given a prescription for Toradol and released home. (Tr. 252).

5

On September 26, 2004, plaintiff returned with complaints of rectal pain. (Tr. 260). An examination revealed what appeared to be a perirectal abscess that was "exquisitely tender." (Tr. 260-261). Because a rectal exam could not be performed, secondary to pain, the doctor recommended the use of anesthesia. (Tr. 261). Following a preoperative chest x-ray that merely showed some degenerative changes in plaintiff's spine and an old left rib fracture, Dr. John Spore performed the examination. (Tr. 262-263). He opened and drained the abscess, noting no other significant abnormalities. (Tr. 263).

Plaintiff underwent a flexible sigmoidoscopy with biopsy due to rectal pain on March 9, 2005. (Tr. 271). He was diagnosed with colitis in the sigmoid and descending colons, as well as Crohn's disease. (Tr. 271). Dr. Pete MacKercher prescribed Flagyl and Prednisone. (Tr. 272).

On March 28, 2005, a residual functional capacity questionnaire was completed by one of plaintiff's doctors. (Tr. 274-278). The doctor's name is not ascertainable. Further, the physician merely diagnosed plaintiff with Crohn's disease and a draining rectal fistula. He failed to assess plaintiff's physical limitations, leaving those fields blank on the questionnaire. (Tr. 274-278).

**Discussion:**

Before addressing the evidence, the Court deems it important to note that the relevant time period in this case is limited. SSI may not be granted prior to a claimant's application filing date, because benefits through an SSI application are allowed only after all regulatory criteria are established, namely after the SSI application is filed. *See* 20 C.F.R. § 416.335; *Jernigan v. Sullivan*, 948 F.2d 1070, 1072 n. 3 (8th Cir. 1991). Therefore, plaintiff must prove that her disability

commenced on or after May 19, 2003, his alleged onset date, and continued through the date of the ALJ's decision.

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the entire record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing, as well as the medical evidence contained in the record, are inconsistent with plaintiff's allegations of disability.

We note that the record does reveal that plaintiff sought treatment for musculoskeletal pain on only three occasions during the relevant time period. (Tr. 233, 240, 252-253). *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment).

7

While one x-ray did reveal some degenerative changes in plaintiff's spine, there is no other objective evidence to show that plaintiff was suffering from a severe back or joint related impairment. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Matthews v. Bowen,* 879 F.2d 422, 425 (8th Cir. 1989) (medical reports showing only minimal back problem allowed ALJ to discount claimant's subjective complaints of disabling back pain). In fact, plaintiff was prescribed pain medication on only one occasion. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain). Further, physical examinations failed to reveal any musculoskeletal abnormalities. As such, we cannot say that plaintiff's musculoskeletal complaints were severe or disabling.

In addition, the record reveals that plaintiff was treated for an alleged seizure on only one occasion. *See Edwards*, 314 F.3d at 967. At that time, a physical examination and a CT scan were both unremarkable. (Tr. 158-160). In fact, plaintiff was released home without medical intervention and was never placed on any anti-seizure medication. Further, we note that plaintiff failed to follow-up with the ENT specialist and the neurologist as advised. (Tr. 158-160). *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (holding that claimant's failure to follow prescribed course of treatment weighed against credibility when assessing subjective complaints of pain). Had plaintiff been suffering from a severe and/or debilitating problem with seizures, we believe he would have sought more consistent treatment and would have followed-up as directed.

AO72A
(Rev. 8/82)

Likewise, plaintiff complained of tinnitus on only two occasions. (Tr. 158, 240). *See Edwards*, 314 F.3d at 967. On both occasions he was treated conservatively. *See Gowel v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against plaintiff's subjective complaints). The doctors merely advised plaintiff to avoid excessive noise. (Tr. 158, 240).

The evidence does reveal that plaintiff was treated for Crohn's disease and rectal bleeding on several occasions during the relevant time period. However, in July 2002, plaintiff refused hospitalization. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (failure to follow a prescribed course of treatment without good cause is grounds for denying an application for benefits). Further, in November 2002, a doctor noted that plaintiff had a history of Crohn's disease but had no active problems. (Tr. 223). Plaintiff was not again treated for this impairment until September 2004. (Tr. 260-262). In fact, during the relevant time period, he was prescribed medication to treat this condition on only two occasions, in July 2002 and March 2005. (Tr. 227, 272). Therefore, given plaintiff's sporadic treatment for this condition, we cannot say that this condition is disabling.

We are also cognizant of the fact that plaintiff suffered from hypertension. (Tr. 223). During the relevant time period, plaintiff was treated on only one occasion for complaints related to his hypertension. At that time, he indicated that he had recently run out of blood pressure medication. (Tr. 223). *Id*. Had plaintiff's hypertension been as disabling as alleged, we believe that the would have taken his medication as prescribed.

9

Plaintiff's own testimony and reports concerning his daily activities are also inconsistent with his complaints of disabling pain. On his disability supplemental interview outline, plaintiff reported an ability to care of his personal hygiene, do laundry, wash dishes, change the sheets, vacuum, sweep, take out the trash, perform small appliance repairs, shop for clothing and groceries, go to the bank, drive, walk for exercise, walk the dog, and go fishing. (Tr. 82-83, 85). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television and drive indicated her pain did not interfere with her ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). In addition, plaintiff stated that he had stopped working about three years prior to filing his application so that he could care for his disabled wife. (Tr. 66). On another form, plaintiff indicated that he had not worked in some time because he cared for his first wife until her death and was now caring for his second wife. (Tr. 73). Clearly, plaintiff's ability to care for himself and others is not consistent with his allegations of disability.

Therefore, although the evidence does indicate that plaintiff suffered from some limitations resulting from his impairments, it does not support his allegations of total disability. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or

10

discomfort does not mandate a finding of disability). In fact, there is no indication in the record that any of his treating physicians concluded that he was disabled. *See Jones v. Callahan*, 122 F.3d 1148, 1152 (8th Cir. 1997) (holding that a lack of medically ordered restrictions weighs against credibility); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (same). The one RFC assessment completed by his treating physician contains no information to show that plaintiff was limited in any area of functioning. Thus, neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a full range of light work. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

AO72A
(Rev. 8/82)

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, the incomplete assessment of a treating physician, plaintiff's subjective complaints, and his medical records. On July 7, 2003, Dr. Jerry Thomas completed an RFC assessment of plaintiff. (Tr. 242-251). After reviewing plaintiff's medical records, he concluded that plaintiff could lift twenty pounds occasionally and ten pounds frequently; push and pull within those same limitations; and, sit, stand, and walk for a total of six hours per day. (Tr. 243). No other limitations were noted. (Tr. 242-251).

As previously noted, plaintiff's own treating physician failed to limit plaintiff's physical activities in any way. (Tr. 274-278). His assessment merely reveals his diagnoses of Crohn's disease and a draining rectal fistula. Therefore, the records contains no objective evidence to indicate that plaintiff is unable to perform a full range of light work. Accordingly, we find substantial evidence to support the ALJ's RFC assessment.

We also find that substantial evidence supports the ALJ's conclusion that plaintiff can perform the positions of housekeeper, meat processor, and plastics worker. (Tr. 20-21). A vocational expert testified that a person of plaintiff's age and education, who could lift twenty pounds occasionally and ten pounds frequently; push and pull within the same weight restrictions; and, sit, stand, and walk for six hours out of an eight-hour workday, could perform these positions. (Tr. 302-303). Given the fact that the VE's response takes into consideration plaintiff's impairment, as found by the ALJ, we find substantial evidence to support the ALJ's determination that plaintiff can perform these positions. *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992) (holding that

AO72A
(Rev. 8/82)

vocational expert's response to a hypothetical question provides substantial evidence to support an ALJ's decision, where the hypothetical question sets forth the claimant's impairments with reasonable precision).

**<u>Conclusion:</u>**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this <u>18th</u> day of September 2006.

<u>/s/ Beverly Stites Jones</u>
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)